SCOTT J. SAGARIA (BAR # 217981)
PATRICK C. CALHOUN (BAR # 56671)
SAGARIA LAW
333 WEST SAN CARLOS STREET
SUITE 1625
SAN JOSE, CALIFORNIA 95110
(408) 279-2288
(408) 279-2299 FAX

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

In Re:

NILESH SHAH and

JAGRUTI SHAH,

      Debtors.

Case No. 10-40467 EDJ

Chapter 11

Date:    January 6, 2011
Time:   2:30 p.m.
Judge:  Edward D. Jellen
Room:  1300 Clay Street
          Room 215
          Oakland, CA 94612

**DISCLOSURE STATEMENT**

FILED BY:  Patrick Calhoun

SAGARIA LAW, P.C.
333 W. San Carlos Street
Suite 1700
San Jose, CA  95110

Attorneys for Nilesh Shah & Jagruti Nilesh Shah

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 1 of 22

# DEBTORS' DISCLOSURE STATEMENT

This Disclosure Statement (the "Disclosure Statement") has been prepared by the Debtors, Nilesh Shah and Jagruti Nilesh Shah (the "Debtors"), and is being distributed to creditors of the Debtors for the purpose of providing background information concerning the Debtors' Amended Plan of Reorganization dated October 17, 2010. This Disclosure Statement is intended to provide the holders of claims against or interests in the Debtors ("Holders") with adequate information regarding the Plan consistent with Bankruptcy Code § 1125. Any questions regarding this Disclosure Statement may be directed to Debtors' attorney, Patrick Calhoun, Esq., 333 W. San Carlos Street, Suite 1700, San Jose, CA 95110, telephone (408) 279-2288.

The formulation and confirmation of a Plan of Reorganization is the principal function of a Chapter 11 case. Such a plan normally includes provisions for: (a) altering and modifying the rights of creditors; (b) dealing with the property of the Debtors; (c) paying costs and expenses of administering the Chapter 11 case; and (d) execution of the Plan. The Plan may affect the interests of all parties and creditors, reject executor contracts, provide for prosecution or settlement of claims that belong to the Debtors.

In order to be confirmed by the Court, the Code requires that there be a finding that the Plan receives the votes of certain requisite classes and that the Plan be "fair and equitable" as to any dissenting classes or creditors, and the plan must be feasible.

The Plan must be accepted by the affirmative vote of the majority (in number) of creditors holding two-thirds (in amount) of claims filed and allowed each class, unless adequate provisions are made for the classes of dissenting creditors. In order to fully understand how a

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 2 of 22

Plan is confirmed, each individual creditor should check with his or her attorney and receive full advice on the interworking of Sections 506(a), 1111, 1122, 1124, and 1129 of the Code.

The Disclosure Statement describes the assets and liabilities of the Debtors, and the forecast of the Debtors' future financial returns. It also summarizes the Plan, which divides creditors and shareholders into a series of different classes, provides for payment of secured and priority creditors claims from operating revenues of the Debtors' business.

If the Plan is confirmed, it will be binding on all creditors of the Debtors.

## I. MANNER OF VOTING ON THE PLAN

An acceptance or rejection of the Plan may be made by completing the ballot which accompanies the Plan and returning it to:

> Patrick Calhoun, Esq.
> SAGARIA LAW, P.C.
> 333 W. San Carlos, Suite 1700
> San Jose, CA 95110

**In order for a vote to be counted, the completed ballot must be received no later than 5:00 p.m. on _____, 2010.**

## II. DEFINITIONS

A. <u>DEFINED TERMS</u>

The following definitions apply in this Disclosure Statement and the accompanying Plan of Reorganization (the "Plan"). Certain additional terms are defined throughout the Plan and Disclosure Statement.

**"Amortized"** means to extinguish the debt by periodic payments to the creditor.

**"Case"** means this Chapter 11 case filed by the Jagruti Nilesh Shah, Case No. 10-40467, on January 15, 2010, converted to a Chapter 11 case on July 22, 2010 and consolidated with the

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 3 of 22

pending Chapter 11 case of Nilesh Shah, Case No. #10-43908 on August 23, 2010.

**"Cash"** means cash and cash equivalents, including checks and other similar forms of payment.

**"Code"** means the Bankruptcy Code as found at Title 11 of the United States Code, as applicable to this Case.

**"Confirmation"** means entry of the Confirmation Order.

**"Confirmation Order"** means the Court's order confirming the Plan under Code section 1129 and Rule 3020(c).

**"Court"** means the United States Bankruptcy Court for the Northern District of California or, in the event such court ceases to exercise jurisdiction over the Case, such court or adjunct thereof which thereafter exercises jurisdiction over the Case or any aspect of it.

**"Debtors"** means Nilesh Shah and Jagruti Nilesh Shah, the debtors in this case.

**"Effective Date"** means the first business day to fall at least 11 days from the date of Confirmation**.**

**"Filing Date"** means January 15, 2010.

**"Final Order"** means an order or judgment of the Court or the District Court as to which: a) the time for appeal has expired and no notice of appeal has been timely filed, or b) any appeal or petition for writ has that has been filed has been withdrawn, dismissed or determined leaving the Court's order intact, and which is not subject to further review by appeal or otherwise.

**"Liquidation"** means the asset is being sold and the proceeds pay creditors in priority until funds are exhausted.

**"Plan"** means the Debtors' Plan of Reorganization submitted along with this Disclosure

Statement, as may be amended in the future.

**"Post Petition"** means events occurring or matters arising after the Filing Date and not otherwise deemed to have occurred or arisen before then.

**"Pro rata"** means proportionately so that the ratio of the consideration distributed on account of an Allowed Claim in a class or other defined group of claims to the consideration distributed on account of all Allowed Claims in the class or group is the same as the ratio of such Allowed Claim to all Allowed Claims in the class or group.

**"Retained Claims"** means all claims that Debtor had as of the Filing Date, all claims that could be asserted by a trustee in the Case immediately before Confirmation (including claims arising under Code sections 362, 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, or 553 or otherwise), and all claims that arose in favor of the Estate after the Filing Date, except as any of the foregoing claims have been expressly and explicitly waived in writing with Court approval.

**"Rules"** means the Federal Rules of Bankruptcy Procedure as applicable to the Case.

**"Substantial consummation"** Substantial Consummation will be achieved upon confirmation of the Plan and Debtor's first monthly payment deposited into the account on behalf of creditors.

B. <u>UNDEFINED TERMS</u>

Terms used herein but not defined by the Plan or Disclosure Statement, but which are defined by the Code, have the meanings given to that term in the Code unless the context of the Plan clearly indicates or requires otherwise.

C. <u>RULES OF CONSTRUCTION AND INTERPRETATION OF TIME</u>

In the event of any inconsistency between the Plan and the Disclosure Statement, the

provisions of the Plan are controlling. The rules of construction set forth in Code section 102 shall apply to the Plan and the Disclosure Statement. In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) shall apply.

D. <u>APPLICABLE LAW</u>

Except insofar as federal law applies or the Plan specifically provides otherwise, the interpretation, implementation and enforcement of the Plan are governed by California law.

E. <u>INTEGRATION AND MODIFICATION</u>

Except as expressly provided otherwise in the Plan, (a) the Plan and any exhibits to it constitute the entire and complete agreement among the parties with claims or interests in Debtor's estate with respect to the matters addressed and transactions contemplated in the Plan, superseding any prior or contemporaneous oral or written agreements or representations concerning such matters or transactions and (b) the rights or obligations contained in the Plan can be modified only (i) by a writing signed by the party to be held to the altered term or (ii) under Code Section 1127, if the modification has a material and adverse affects on the rights and remedies of nonsignatories.

### III. BACKGROUND OF DEBTORS

Debtors are husband and wife. Debtors reside in their primary residence located at 48477 Cereus Court, Fremont, CA 94539. Debtors currently have one child who is their dependent. Nilesh Shah is a small business owner operating a convenience store known as "Discount Club" and a consultant for Adios Services, Inc. Jagruti Nilesh Shah is currently a lead staffing agent at Xorient Corporation. According to Debtors' Monthly Operating Report for September and October, Nilesh Shah's average monthly salary income from Adios Services, Inc. is $2,738.00. Average monthly income from the operation of the business known as

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 6 of 22

Discount Club is $1,518.00. Jagruit Nilesh Shah current income is $5,849.00 in salary from Xorient Corporation. The total monthly income is $10,105.00.

In 2004, Pooja Oil Company, LLC entered into an agreement to purchase a gas station located at 3834 Broadway Street, American Canyon, CA 94503. Jagruti Nilesh Shah owns a 50% interest in Pooja Oil Company, LLC. Pooja Oil Company, LLC received financing for the property from BLC, LLC and Cienna Capital, LLC. Nilesh Shah was a guarantor on the loan from Cienna Capital, LLC. Debtors operated the gas station through Pooja Oil Company, LLC for two years but were unable to make it profitable due to reduced gas prices and worsening economic conditions. In 2006 Pooja Oil Company, LLC tried to sell the gas station to Julnar Msalam. Julnar Msalm backed out of the agreement and Debtors continued to operate the business. Pooja Oil Company, LLC was eventually forced to shut down the gas station in March of 2009 in the midst of the financial crisis due to lower gas prices, a deteriorating customer base and the inability to obtain outside financing. The property went into foreclosure. Debtors used their personal credit to keep the gas station operational, which quickly escalated the amount of their debt.

On January 15, 2010, Jagruti Nilesh Shah filed a petition under Chapter 13 of the Bankruptcy Code, Case No. 10-40467. On April 7, 2010, Applicant Nilesh Shah filed a petition under Chapter 11 of the Bankruptcy Code, Case No. 10-43908. On June 30, 2010, the Court granted Jagruti Nilesh Shah's motion to convert her Chapter 13 case to Chapter 11 of the Bankruptcy Code. On August 23, 2010, the Court granted Jagruti Nilesh Shah's motion to consolidate her Chapter 11 bankruptcy with Nilesh Shah's Chapter 11 bankruptcy. Pursuant to the Order filed August 23, 2010, Debtors' cases were consolidated under the case of In re Jagruti Shah, Case No. 10-40467.

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 7 of 22

Debtors' estate is currently encumbered with $700,959.62 in secured debt, with $20,541.00 in unsecured priority debt and $1,638,569.00 in unsecured non-priority debt.

## III. THE PLAN

A. Plan Objectives

The Plan provides for payments to all secured and unsecured claims against Debtors. Debtors propose to surrender their 2007 Toyota Sienna and continue to make payments on the 2007 Toyota Prius, pursuant to the current terms of their contract. Debtors will continue to make payments pursuant to the mortgage for their primary residence and shall pay off all miscellaneous expenses in a one time payment after confirmation. Debtors propose to pay Jad Massis $60,000 through 5 years of monthly payments with interest accruing at 4%. The balance of Jad Massis claim shall be deemed unsecured. All debt in excess of a property's fair market value shall be treated as unsecured. This pertains to the following obligations: Digital Federal Credit Union's unsecured second mortgage on 48477 Cereus Court, Fremont, CA 94539, in the amount of $102,475.10, and Digital Federal Credit Union's unsecured equity line on 48477 Cereus Court, Fremont, CA 94539, in the amount of $48,313.24. Creditors holding general unsecured non-priority claims will be repaid their pro rata share of 10% of Debtors' total unsecured debt over 5 years. Debtors assume all executory contracts not expressly rejected. Equity security holders' interests in Debtors' estate shall remain unaltered.

B. Specifications and Treatment of Claims

The Plan divides creditors into various classes based upon their legal rights.

The following table briefly summarizes the classification and treatment of all claims under the Plan and the consideration distributable to such claims and interests under the Plan. The information set forth in the following table is for convenience or reference only, and each holder

of a claim should refer to the Plan for a full understanding of the classification and treatment of claims provided under the Plan.

| CLASS | CLAIMS | SUMMARY OF TREATMENT |
|---|---|---|
| Nonclassified | Administrative Expenses | Paid in full by Debtors from Cash from the estate on latest of (a) Effective Date; (b) when due; or (c) when allowed by Final Order. |
| Nonclassified | Priority Tax Claims | The Internal Revenue Service's claim is in the amount of $1,394.00. Debtor shall pay the $1,394.00 over a one year period starting on the effective date of the plan. The claim from the Internal Revenue Service shall accrue interest at 4% per annum. Monthly payments shall be in the amount of $118.70.<br>The State Board of Equalization's claim is in the amount of $19,147.00. Debtor shall pay the $19,147.00 over a four year period starting on the effective date of the plan. The claim from the State Board of Equalization shall accrue interest at 18% per annum. Monthly payments shall be in the amount of $562.44. |
| Class 1 | Digital Federal Credit Union | Claim of $24,000.00 secured by a 2007 Toyota Sienna, with an estimated value of $24,000.00. Debtors intend to surrender property.<br>**UNIMPAIRED** |
| Class 2 | Digital Federal Credit Union | Claim of $16,135.00 secured by a 2007 Toyota Prius. Debtors propose to continue the current monthly payment of $474.00. Debtor is current on payments. Payments shall continue until balance is paid in full.<br>**UNIMPAIRED** |

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 9 of 22

| | | |
|---|---|---|
| Class 3 | GMAC Mortgage LLC, as successor in interest to HSBC Bank, N.A. also known as HSBC Mortgage Corporation, USA | Claim of $559,692.67, including $1,894.59 interest and miscellaneous expenses, secured by 48477 Cereus Court, Fremont, CA 94539. Debtors propose to pay fully the current monthly mortgage payment of $1,864.00. Payment is to begin within 30 days subsequent to confirmation. Payments shall continue until principal is paid in full. Debtor proposes to pay off all interest and miscellaneous expenses within 30 days subsequent to confirmation through use of cash in DIP accounts in a one-time payment of $1,894.59.<br>**IMPAIRED** |
| Class 4 | Jad Massis | Claim of $101,131.95 secured by the business known as Discount Club, formerly the Reliable Grocery. Debtors have reached an agreement with Jad Massis, with a stipulation to follow, that the value of the Discount Club is $60,000. This secured debt shall incur interest at 6.5% per annum. Debtor proposes to repay this amount over five years in monthly payments of $1,173.97. Payments shall begin 15 days after confirmation of the plan. The remaining $41,131.95 shall be deemed unsecured debt and paid according to Class 5.<br>**IMPAIRED** |
| Class 5 | General Unsecured Creditors | The total of all allowed general unsecured claims is $1,789,357.00. Debtors propose to repay 10% of all unsecured debt over five years. Payments of $2,982.26 will be made monthly and distributed pro rata. Payments shall begin 15 days after confirmation of the plan.<br>**IMPAIRED** |
| Class 6 | Executory Contracts | Debtors assume all executory contracts not expressly rejected.<br>**UNIMPAIRED** |
| Class 7 | Equity Security Holders | Equity security holders' interest in Debtors' estate shall remain unaltered.<br>**UNIMPAIRED** |

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 10 of 22

**1. Administrative Claims**

Unclassified Allowed Administrative Claims, other than Operational Administrative Claims, entitled to priority under Section 507(a)(1) of the Bankruptcy Code, will receive payments as may be agreed upon between Debtors and the administrative claimant. The unclassified allowed administrative claims as of the date of the Disclosure Statement are the professional fees owed to Debtors' Chapter 11 Counsel, Sagaria Law, P.C. Debtors' attorney, Sagaria Law, P.C.'s Application to Employ was submitted on April 19, 2010 and is awaiting final approval by the Court. Debtors paid a general retainer to Sagaria Law, P.C. in the amount of $17,569.00, plus the $1,039.00 Chapter 11 filing fee. Sagaria Law estimates it will incur an additional $5,000 in fees through Plan confirmation. Fees owed to Sagaria Law, P.C. can only be paid upon application to, and approval by the United States Bankruptcy Court. Sagaria Law, P.C. has agreed to accept payments over time to assist Debtors in their reorganization.

a)     **Post-Petition Tax Claims**

Debtors are current on all post petition taxes owed either to state or federal agencies.

b)     **Court Fees and Costs**

All fees and costs Debtors owe pursuant to 28 U.S.C. § 1930 will be paid in full on or before the Effective Date of the Plan.

c)     **United States Trustees Fees**

The Bankruptcy Code requires Debtors to pay a fee to the Office of the United States Trustee during the pendency of its Chapter 11 case until the case is converted, dismissed or closed pursuant to a Final Decree. Debtors are current on fees owed to the United States Trustee.

**2. Priority Tax Claims:** The priority tax claims consist of two claims totaling $20,541.00.

Case: 10-40467   Doc# 72   Filed: 11/19/10   Entered: 11/19/10 18:25:58   Page 11 of 22

**a.**     The Internal Revenue Service's claim is in the amount of $1,394.00. Debtors shall pay the $1,394.00 over a one year period starting on the effective date of the plan. The claim from the Internal Revenue Service shall accrue interest at 4% per annum. Monthly payments shall be in the amount of $118.70.

**b.**     The State Board of Equalization's claim is in the amount of $19,147.00. Debtors shall pay the $1,394.00 over a four year period starting on the effective date of the plan. The claim from the State Board of Equalization shall accrue interest at 18% per annum. Monthly payments shall be in the amount of $562.44.

**3. Class 5: General Unsecured Creditors**

Debtors propose to repay their general unsecured creditors 10% of their pro rata share of the total debt over 60 months. The first payment shall commence 30 days after the Effective Date of the Plan. All subsequent payments shall be paid on the 20th of each month. Payments will end 60 months after the initial payment. Debtor reserves the right to object to claims before the Plan of Reorganization is confirmed.

Included in the general unsecured debt is Digital Federal Credit Union's unsecured second mortgage on 48477 Cereus Court, Fremont, CA 94539, in the amount of $102,475.10, and Digital Federal Credit Union's unsecured equity line on 48477 Cereus Court, Fremont, CA 94539, in the amount of $48,313.24. There is currently no equity in the property after the first mortgage of GMAC Mortgage LLC, as successor in interest to HSBC Bank, N.A. also known as HSBC Mortgage Corporation, USA is paid according to Class 5.

The total of all allowed general unsecured claims is $1,789,357.00. Debtor proposes to repay 10% of all unsecured debt over five years. Payments of $2,982.26 will be made monthly and distributed pro rata. Payments shall begin 15 days after confirmation of the plan.

| | | |
|---|---|---|
| **Adel S. Algazail**<br>Amount: $5,000.00 | **American Express Centurion Bank**<br>Accoutn No. 3723-962565-51005<br>Amount: $20,447.42 | **Bank of America, N.A.**<br>Account No. 4339-9300-2258-7978<br>Amount: $19,871.32 |
| **Bank of America, N.A.**<br>Account No. 4888-6031-1302-0408<br>Amount: $ 21,367.51 | **Blue Moon Wine**<br>Amount: $ 872.00 | **Capital One, N.A.**<br>Amount: $ 281.95 |
| **Chase Card Member Services**<br>Account No. 4147-2020-2638-0384<br>Amount: $6,623.00 | **Chase Card Member Services**<br>Account No. 5418-2279-8815-0821<br>Amount: $ 3,217.11 | **Citi Bank, N.A. aka Citi Cards**<br>Account No. 5424-1807-2921-9516<br>Amount: $ 16,846.69 |
| **Citibank, N.A.**<br>Account No. 40037371693<br>Amount: $200.00 | **DBI Beverage of San Francisco**<br>Amount $ 4,300.00 | **Discover Bank**<br>Account No. 6011-0000-2037-1567<br>Amount $12,223.42 |
| **Food Island**<br>Account No. 563096<br>Amount: $ 1,241.00 | **Digital Federal Creit Union**<br>Amount: $12,038.45 | **Geary Wholesale Company**<br>Account No. 949651<br>Amount: $ 29,635.05 |
| **Greenan Peffer Sallander & Lally LLP**<br>Amount: $ 1,607.57 | **Henry Ice Cream**<br>Amount: $ 612.00 | **Matcigrano Inc.**<br>Amount: $ 3,760.00 |
| **Regel Wine Company**<br>Account No. 568958<br>Amount: $ 1,806.38 | **Terminix**<br>Account No. 6678016<br>Amount: $ 470.00 | **U.S. Bank, N.A.**<br>Account No. 4798-5312-0554-3566<br>Amount: $ 3,349.76 |
| **U.S. Bank, N.A.**<br>Account No. 4037-8400-1630-3198<br>Amount: $ 9,522.73 | **Wine Wearhouse**<br>Account No. 4037-8400-1630-3198<br>Amount: $ 7,500.00 | **Advanta Bank Corp**<br>Account No. 5584-1800-1620-4284<br>Amount: $ 8,693.00 |

Case: 10-40467   Doc# 72   Filed: 11/19/10   Entered: 11/19/10 18:25:58   Page 13 of 22

| | | |
|---|---|---|
| **American Canyon RCS & MC.** Account No. 071261700 Amount: $ 800.00 | **American Express Company** Accoutn No. 3715-609142-23007 Amount: $ 481.00 | **Fia Card Services, NA as Succesor in Interest to Bank of America, N.A.** Account No. 3743-220452-12863 Amount: $ 12,809.25 |
| **Portfolio Recovery Associates, LLC as successor in interest to JP Morgan Chase & Co, N.A.** Account No. 5401-6830-5968-3208 Amount: $ 9,644.15 | **Citibank, N.A.** Account No. 542418083325 Amount: $ 5,835.00 | **City of American Canyon** Account No. 071261700 Amount: $ 984.00 |
| **Macys/fdsb** Account No. 4502149291820 Amount: $ 231.00 | **Napa County Weight & Measures** Account No. 00209 Amount: $ 828.00 | **Sears/cbsd** Account No. 5121071855005769 Amount: $ 153.00 |
| **Visdsnb** Account No. 4308517036745887 Amount: $ 231.00 | **Wells Fargo Bank, NA** Account No. 5474-6488-0224-3438 Amount: $ 16,117.42 | **Wells Fargo Bank, NA** Account No. 4465-4201-8714-7335 Amount: $ 27,919.64 |
| **Wfs Financial/Wachovia Dealer Services** Account No. 518551522267 Amount: $ 29,106.00 | **Roundup Funding, LLC** Amount: $ 6,867.00 | **Ciena Capital, LLC** $1,238,087.92 |
| **Robinson-Kappos** Amount: $ 6,672/99 | **Jad Massis** $41,131.95 | **Robinson-Kappos** Amount: $ 5,957.38 |
| **PRA Recievables Management, LLC as agent of Portfolio Recovery Associates, LLC** Amount: $103.44 | **PRA Recievables Management, LLC as agent of Portfolio Recovery Associates, LLC** Amount: $5,835.65 | **Digital Federal Credit Union** Amount: $176.00 |
| **Digital Federal Creit Union** unsecured second mortgage on 48477 Cereus Court, Fremont, CA 94539 Amount: $102,475.10 | **Digital Federal Creit Union** Unsecured equity line on 48477 Cereus Court, Fremont, CA 94539 Amount: $48,313.24 | |

/ / /

**3. Other Plan Provisions**

      A.     **Disbursing Agent**

The Debtors will act as the Disbursing Agent under the Plan.

      B.     **Objections to Claims**

Debtors will have the responsibility for objecting to the Allowance of Claims. All objections shall be filed with the Court not later than 45 days following approval of Debtors' Plan. Debtors, as of the date of this Disclosure Statement, do not anticipate objecting to any additional claims filed thus far.

      C.     **Prepayment**

Nothing in this Disclosure Statement shall prohibit early Distribution on account of Allowed Claims to Class 6 from income of Debtors; such distribution may be made at the option of Debtors without any pre-payment penalty.

**IV.    THE BEST INTEREST TEST AND THE LIQUDATION ANALYSIS**

The "best interest" test requires that the Plan provide to each member of each impaired class a recovery that has a present value at least equal to the present value of the distribution which such a member would receive in the Debtors was liquidated under Chapter 7 of the Bankruptcy Code.

In performing this analysis, the Bankruptcy Court must first determine the dollar amount that would be generated from liquidation of Debtors' assets, add this amount to the cash held by the Debtors, and then deduct the costs of liquidations and liabilities. Liabilities include any trustee fees, taxes & closing costs for real properties, estimated to be 12% of the current market value of the property. This information can be found in the chart below.

Case: 10-40467   Doc# 72   Filed: 11/19/10   Entered: 11/19/10 18:25:58   Page 15 of 22

| Item: | FMV at Filing: | Debt Owed: | Liquidation Costs and Exemptions | Equity: |
|---|---|---|---|---|
| 48477 Cereus Court, Fremont, CA 94539 (Primary Residence) | $527,571.00 | 1st Mortgage: $559,692.67 2nd Mortgage: $102,475.10 Equity Line $48,313.24 | $63,308.52 | $0 |
| 3834 Broadway Street, American Canyon, CA 94503 (50% Interest in Equity pursuant to 50% Ownership Interest in Pooja Oil Company, LLC) | $369,000.00 | 1st Mortgage: $101,489.56 Property Taxes $38,124.79 | $44,280.00 | $92,552.83 (50% Interest) |
| Stocks & Interest in Businesses including Inventory & Office Equipment | $60,000.00 | Jad Massis Loan $101,131.95 | $6,000.00 | $0 |
| Chase Bank Account | $3,491.00 | | $3,491.00 | $0 |
| Bank of America Account | $203.00 | | $203.00 | $0 |
| HSBC Bank Account | $11,086.00 | | $11,086.00 | $0 |
| Household Goods | $3,000.00 | | $3,000.00 | $0 |
| Wearing Apparel | $200.00 | | $200.00 | $0 |
| Furs and Jewelry | $1,300.00 | | $1,300.00 | |
| Firearms and Sports, Photographic and Other Hobby Equipment | $400.00 | | $400.00 | $0 |

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 16 of 22

| | | | | |
|---|---|---|---|---|
| 2007 Toyota Sienna | $24,000.00 | 24,000.00 | | $0 |
| 2007 Toyota Prius | $16,880.00 | $16,135.00 | $745.00 | $0 |
| Citibank Annuities | $38,018.85 | | $38,018.85 | $0 |
| IRA | $45,000.00 | | $45,000.00 | $0 |
| **TOTAL:** | **$1,100,149.85** | **$991,362.31** | **$199,100.85** | **$92,552.83** |

Under Chapter 7, all secured creditors would be paid with the equity of the collateral property, minus the trustee fees, taxes and closing costs related to the sale of the property. Any creditor's claims secured to a property with no equity to repay their debt would receive nothing. All general unsecured debtors would receive a pro rata distribution of $92,552.83 in a Chapter 7 liquidation. The current amount of general unsecured, not including any portion of mortgages unsecured by the current fair market value of the secured property, is $1,638,569.00. Each unsecured creditor would receive approximately 5.6% of their total debt from Chapter 7 liquidation, while they would receive 10% pursuant to the proposed plan.

## V.    FEASIBILITY

As a condition of Confirmation, the Bankruptcy Court must find that Confirmation is not likely to be followed by liquidation or the need for further reorganization. Debtors must therefore demonstrate that it will have the financial ability to pay the unsecured creditors the dividend described in the Plan.

Debtors currently have surrendered eleven properties that were underwater to make any plan of their estate feasible. Post-petition, Debtors have been diligent in paying the first mortgage on their primary residence that they seek to retain since filing bankruptcy.

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 17 of 22

The Debtors are proposing to make the following payments:

| | | |
|---|---|---|
| 1. | Internal Revenue Service | $118.70 |
| 2. | State Board of Equalization | $562.44. |
| 3. | Payment for 2007 Toyota Prius | $474.00 |
| 4. | First mortgage payment on 48477 Cereus Court | $1,864.00 |
| 5. | Jad Massis | $1,173.97 |
| 6. | Unsecured creditors | $2,982.26 |
| | **Total** | **$7,175.37** |

**Debtors average net income is approximately $10,105.00.**[1]  Debtors average monthly distribution is $4,861.00.  These expenses include the payment for the 2007 Toyota Prius and first mortgage payment on 48477 Cereus Court.  These expenses should be subtracted from any accounting of their average monthly expenses.  **Therefore, Debtors' monthly expenditures, less the expenses paid through the plan, is $2,523.00.**

| | |
|---|---|
| **Average Cash Receipts** | **$10,105.00** |
| **Average Cash Disbursements Minus Expenses Accounted For Through the Plan** | **$2,523.00.** |
| **Proposed Payments Under the Plan** | **$7,175.37** |
| **Excess of Receipts Over Deficits** | **$406.63** |

At their current level of income, Debtors can fully fund the plan and retain $406.63 for any emergency expenses or use these monies to pre-pay taxes or general unsecured creditors.

---

[1] *See* Monthly Operating Report's Summary of Financial Status and Statement of Operations for the period of September 2010 to October 2010.

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 18 of 22

## VI.    GENERAL PROVISIONS

**A.    Effective Date of the Plan**:  The Effective Date of the Plan is 30 days after the Order of Confirmation is entered on the docket.

**B.    Means of Execution/Funding of Plan**:    The funds necessary for the implementation of the plan will arise from Debtors' personal income generated through income from employment and revenue from the "Discount Club," their family owned convenience store.   According to Debtors' Monthly Operating Reports for September through October, Debtors monthly income is on average $10,105.00.

## VII.    RETENTION OF JURISDICTION

**A.    Final Decree:**  When the Plan is complete, which will be when the final 60 month payment has been made and all three liens have been satisfied in full, the Reorganized Debtors shall file an application for a Final Decree and shall serve the application on the United States Trustee, together with a proposed Final Decree.  The United States Trustee shall review the status of the case before consenting to the court's entry of the Final Decree.

**B.    Vesting of Property in Debtors:**  On the Effective Date, all property of the estate shall vest in the Reorganized Debtors pursuant to Section 1141(b) of the Bankruptcy Code, provided that the vesting of said property shall be without prejudice to and shall not act as a bar to a post-confirmation motion to convert this case to one under Chapter 7 of Title 11 by the United States Trustee or any other party in interest on any appropriate grounds, and, upon the granting of such motion, the Plan shall terminate and the Chapter 7 estate shall consist of all remaining property in the Chapter 11 estate not already administered.  Such remaining property shall be administered by the Chapter 7 Trustee as prescribed in Chapter 7 of the Bankruptcy Code.  The Reorganized Debtors reserves the right to oppose any such motion.

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 19 of 22

**C.** **Post-Confirmation Professional Fees:** A professional performing post-confirmation services for the Debtors is not required to obtain court approval of his/her fees and costs.

**D.** **Modification of the Plan:** The Plan may be altered, amended or modified by the Debtors before or after Confirmation as provided in Section 1127 of the Bankruptcy Code. Debtors may modify the Plan prior to the Effective Date if the Court determines that the modification does not materially or adversely affect or impair the interest of any holder of a Claim who has not accepted such modification. Such modification shall be deemed accepted by holders of claims who have previously accepted the Plan.

**E.** **Notices:** Any notice to Debtors shall be in writing and mailed and shall be deemed to have been given three days after the date sent by first class mail, postage prepaid and addressed as follows:

> Patrick Calhoun, Esq.
> SAGARIA LAW, P.C.
> 333 W. San Carlos, Suite 1700
> San Jose, CA 95110

**F.** **United States Trustee Fees:** Debtors shall pay United States Trustee fees until the case is closed pursuant to a Final Decree.

**G.** **Prepayment:** Nothing in the Plan shall prevent Debtors from completing the Plan earlier than scheduled.

**H.** **Discharge:** Upon confirmation of the Plan, Debtors will emerge from bankruptcy and be working under contract with its creditors. Debtors will not receive a discharge until the plan is fully performed.

/ / /

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 20 of 22

# VIII.   POST-CONFIRMATION REPORTS AND FEES

### A.        Post-Confirmation United States Trustee Quarterly Fees

A quarterly fee shall be paid by the Reorganized Debtors to the United States Trustee, based upon all disbursements made by Debtors, post-confirmation, until this case is converted, dismissed or closed pursuant to a Final Decree as required by 28 U.S.C. § 1930(a)(6).  Reports shall include an analysis of plan payments placed in trust for creditors.

### B.        Chapter 11 Post-Confirmation Reports and Final Decree

At the end of the calendar quarter first occurring after entry of the Confirmation Order, the Reorganized Debtors shall file a post-confirmation status report, the purpose of which is to explain the progress made toward substantial consummation of the confirmed plan of reorganization.  The report shall include a statement of receipts and disbursements, with the ending cash balance, for the entire 90 day period.  The report shall also include information sufficiently comprehensive to enable the court to determine: (1) whether the order confirming the Plan has become final; (2) whether deposits, if any, required by the Plan have been distributed; (3) whether any property proposed by the Plan to be transferred has been transferred; (4) whether the Reorganized Debtors under the Plan have assumed the business or the management of the property dealt with by the Plan; (5) whether payments under the Plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. §1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved.  Further reports will be filed every 90 days thereafter until entry of the Final Decree.  The Reorganized Debtors will continue to provide reports concerning the Plan payments to the United States Trustee until the case is closed.

Case: 10-40467   Doc# 72   Filed: 11/19/10   Entered: 11/19/10 18:25:58   Page 21 of 22

**C,** <u>**Service of Reports**</u>**:** A copy of each report shall be served, no later than three days from the date it is filed with the court, upon the United States Trustee and other such persons or entities as my request such reports in writing, by notice served on Debtors and Debtors' attorney.

## IX.   CONCLUSION

Debtors requests that the creditors vote to approve the Plan.

Respectfully submitted,

SAGARIA LAW, P.C.

Dated:  November 19, 2010          */s/ Patrick Calhoun* _____ _____
                                                          Patrick Calhoun
                                                          Debtors' Attorney

Dated:  November 19, 2010          */s/ Nilesh Shah*_____
                                                          Nilesh Shah

Dated:  November 19, 2010          */s/ Jagruti Nilesh Shah*_____
                                                          Jagruti Nilesh Shah

Case: 10-40467    Doc# 72    Filed: 11/19/10    Entered: 11/19/10 18:25:58    Page 22 of 22